**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEALTHY GULF, *et al.*, | |
| Plaintiffs, | |
| v. | No. 1:25-CV-04016-APM |
| BURGUM, *et al.*, | |
| Defendants, | Hon. Amit P. Mehta |
| and | |
| AMERICAN PETROLEUM INSTITUTE, | |
| Proposed Intervenor-Defendant. | |

**MOTION OF THE AMERICAN PETROLEUM INSTITUTE
FOR LEAVE TO INTERVENE AS A DEFENDANT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ..............................................................................................................1

ARGUMENT......................................................................................................................3

I.      IF REQUIRED, API HAS STANDING TO INTERVENE ............................................3

II.     API IS ENTITLED TO INTERVENE AS OF RIGHT ................................................5

        A.      This Motion Is Timely ......................................................................5

        B.      API Possesses A Cognizable Interest That May Be Impaired Or Impeded
                By This Proceeding...........................................................................6

        C.      API's Interests Will Not Be Adequately Protected By An Existing Party .............8

III.    IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION ............9

IV.     ASSUMING INTERVENTION IS GRANTED, API' RESPONSE TO THE COMPLAINT
        SHOULD BE DUE ON THE SAME DAY AS DEFENDANTS' RESPONSE ...................10

CONCLUSION...................................................................................................................11

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amador County v. U.S. Department of Interior*, 772 F.3d 901 (D.C. Cir. 2014) ............................6

*Amgen, Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004) ........................................................................4

*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................................................4

*California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) ..........................................................................2

*Center for Biological Diversity v. U.S. Department of Interior*, 563 F.3d 466
    (D.C. Cir. 2009) ..........................................................................................................................2

*Center for Biological Diversity v. U.S. Department of Interior*, 640 F.Supp.3d 59
    (D.D.C. 2022) ............................................................................................................................6

*Center for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) ....................................2

*Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39
    (1st Cir. 1992) ............................................................................................................................4

*County of San Miguel v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) ..............................................9

*Crossroads Grassroots Policy Strategies v. Federal Election Commission*, 788
    F.3d 312 (D.C. Cir. 2015) ......................................................................................................3, 4

*Deutsche Bank National Trust Co. v. Federal Deposit Insurance Corp.*, 717 F.3d
    189 (D.C. Cir. 2013) ..................................................................................................................3

*Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) ....................................................8

*EEOC v. National Children's Center, Inc.*, 146 F.3d 1042 (D.C. Cir. 1998) ..................................9

*Environment Integrity Project v. Wheeler*, 2021 WL 6844257 (D.D.C. Jan. 27,
    2021) ..........................................................................................................................................4

*Farmer v. U.S. Environmental Protection Agency*, 759 F.Supp.3d 101 (D.D.C.
    2024) ..........................................................................................................................................4

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) ...............................................5, 6

*Gulf Restoration Network v. Bernhardt*, 456 F.Supp.3d 81 (D.D.C. 2020) ....................................2

*Hughes v. Abell*, 2014 WL 12787807 (D.D.C. Feb. 10, 2014) ........................................................10

*Institutional Shareholder Services, Inc. v. SEC*, 142 F.4th 757 (D.C. Cir. 2025) ...........................3

*Karsner v. Lothian*, 532 F.3d 876 (D.C. Cir. 2008).................................................................5

*Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1998) ......................................................10

*League of Conservation Voters v. Trump*, 303 F.Supp.3d 985 (D. Alaska 2018) ..........................2

*LeBoeuf, Lamb, Greene & MacRae, LLP v. Abraham*, 205 F.R.D. 13 (D.D.C. 2001) ..................................................................................................................................9

*Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004) (en banc) ...........................10

*Natural Resources Defense Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977).............................6

*Natural Resources Defense Council, Inc. v. Hodel*, 865 F.2d 288 (D.C. Cir. 1988).....................2

*Oceana v. Bureau of Ocean Energy Management*, 37 F.Supp.3d 147 (D.D.C. 2014) ..................................................................................................................................2

*Peaje Investments LLC v. García-Padilla*, 845 F.3d 505 (1st Cir. 2017)....................................10

*Red Lake Band of Chippewa Indians v. Army Corps of Engineers*, 338 F.R.D. 1 (D.D.C. 2021) ..................................................................................................................6

*Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014) ...................................................................6

*SEC v. Prudential Securities Inc.*, 136 F.3d 153 (D.C. Cir. 1998) ..............................................5

*Southern Utah Wilderness Alliance v. Norton*, 2002 WL 32617198 (D.D.C. June 28, 2002) ..................................................................................................................................6

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2016).....................5, 9

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) .............................................8

*United States v. AT&T Co.*, 642 F.2d 1285 (D.C. Cir. 1980) .....................................................5

*WildEarth Guardians v. Jewell*, 2016 WL 11720188 (D.D.C. Nov. 23, 2016)..............................6

*WildEarth Guardians v. Salazar*, 272 F.R.D. 4 (D.D.C. 2010)....................................................6

*Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011) ..................................10

**Docketed Cases**

*Gulf v. Burgum*, 1:23-cv-604 (D.D.C.) ....................................................................................2

*Voyageur Outward Bound School v. United States*, No. 18-cv-1463 (D.D.C.)............................11

**Statutes And Rules**

42 U.S.C. §4321.................................................................................................................4

Federal Rule of Civil Procedure 24 ................................................................................ *passim*

**Other Authorities**

BOEM, Gulf of America Region, Summary of Company Bids, at
  https://www.boem.gov/sites/default/files/documents/oil-gas-
  energy/leasing/Sale-BBG1-Amount-of-High-Bid_1.pdf.....................................................1, 2

The American Petroleum Institute (API) moves for leave to intervene as of right as a defendant in this case, under Federal Rule of Civil Procedure 24(a).  API alternatively moves for leave to intervene permissively under Rule 24(b).  Plaintiffs do not oppose this motion on condition that API file joint briefs with defendant-intervenor Chevron U.S.A. Inc.  The federal defendants take no position on this motion.  Chevron consents to this motion.

**INTRODUCTION**

This case concerns the sale of leases on the Outer Continental Shelf in the Gulf of America that will allow lessees to explore for, develop, and produce oil and natural gas. Plaintiffs contend that the congressionally mandated lease sale by the Bureau of Ocean Energy Management (BOEM) violates the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA).  Plaintiffs seek relief that includes vacating or enjoining any bids accepted or leases executed following the sale, which is known as Lease Sale BBG1.

API seeks to intervene because it has a substantial interest in Lease Sale BBG1 and the leases that will be executed based on the sale.  API is the primary national trade association of the oil and natural gas industry, representing more than 600 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil.  *See* Hopkins Decl. ¶1 (attached as Ex. 1).  API and its member companies are committed to ensuring a strong and viable U.S. oil and natural gas industry, capable of meeting America's energy needs in an efficient and environmentally responsible manner.  *Id.* ¶2.  API's members are deeply involved in the exploration for and development of oil and natural gas resources.

BOEM held Lease Sale BBG1 on December 10, 2025.  Numerous API member companies participated in the sale by submitting bids for leases in the Gulf of America.  *See* Hopkins Decl. ¶11; BOEM, Gulf of America Region, Summary of Company Bids, at

1

https://www.boem.gov/sites/default/files/documents/oil-gas-energy/leasing/Sale-BBG1-Amount-of-High-Bid_1.pdf?VersionId=27VKAfCezUTWRWpjg0plAhEgPxj6ImVU.  API member companies submitted approximately 140 high bids for the available leases, totaling approximately $240 million.  *Id*.  Because API member companies participated in Lease Sale BBG1 and should ultimately be granted leases, this lawsuit directly implicates the interests of API and its members.  Accordingly, API seeks intervention as of right or in the alternative, permissive intervention, to protect those interests.[*]

This Court and others (including the D.C. Circuit) have repeatedly granted API's motions to intervene in lawsuits brought by plaintiffs challenging governmental actions with respect to oil and gas activities, including those related to oil and gas lease sales.  *See, e.g.*, Minute Order, *Gulf v. Burgum*, 1:23-cv-604 (D.D.C. May 8, 2023); *Gulf Restoration Network v. Bernhardt*, 456 F.Supp.3d 81, 93 (D.D.C. 2020) (subsequent history omitted); *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588, 593 (D.C. Cir. 2015); *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F.Supp.3d 147, 150 n.2 (D.D.C. 2014); *League of Conservation Voters v. Trump*, 303 F.Supp.3d 985, 991 & n.26 (D. Alaska 2018); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466 (D.C. Cir. 2009); *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 293 (D.C. Cir. 1988); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983).  And this Court has granted intervention as of right in this case to Chevron, which has related but narrower interests than API.

---

[*] At least ten API member companies bid on leases during Lease Sale BBG1, including Anadarko US Offshore LLC (a wholly owned subsidiary of Occidental Petroleum Corporation), BP Exploration & Production Inc., Chevron U.S.A. Inc., Woodside Energy (Deepwater) Inc., Murphy Exploration & Production Company, Shell Offshore Inc., Equinor USA E&P Inc., Repsol OCS LLC, LLOG Exploration Offshore, LLC, and W&T Offshore, Inc.

**ARGUMENT**

**I.    IF REQUIRED, API HAS STANDING TO INTERVENE**

This Court has stated that "intervenors must demonstrate Article III standing," which "requires a showing of injury-in-fact, causation, and redressability." *Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit Ins. Corp.*, 717 F.3d 189, 193 (D.C. Cir. 2013). The Court has stated more recently, however, that only "[i]ntervenors seeking relief broader than or different from that sought by existing parties must possess constitutional standing," while "intervenors that seek the same relief sought by at least one existing party need not do so." *Institutional Shareholder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (citing cases). The Court recognized that this "distinction is in tension with some of our court's precedent requiring an intervenor to demonstrate Article III standing even if pursuing the same relief as an existing party," and that "[t]hat tension has led to some confusion at the district court level." *Id.* The Court has not resolved that tension, however, so API explains here why it has standing if it must make that showing.

To begin with, "sufficient injury in fact" generally exists "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015). That is the situation here: In asking this Court to vacate the sale or enjoin leases, plaintiffs seek to deprive API's members of the use of leases which they would be awarded from Lease Sale BBG1, as well as remove the opportunity to earn millions of dollars in potential production opportunities from leased tracts.

Second, in situations like those here where a favorable ruling for plaintiffs would strip API's members of the benefits of a lease sale, "then it rationally follows the injury is directly traceable to [plaintiffs] challenge to the [BOEM lease sales]." *Crossroads Grassroots*, 788 F.3d

at 316.  Put differently, if the agency's decision regarding lease sales remains undisturbed, API members will retain their leases and benefit from further lease sales in the imminent future. Plaintiffs challenge that status quo and success would force API members to lose leases and anticipated revenues.  Thus, the injury is directly traceable to plaintiffs' challenge.

Regarding redressability, the Court's disposition of this action could prevent the potential harm posed by plaintiffs' lawsuit and thus protect the ability of API's members to advance their interests in the Gulf.  Simply put, API "can prevent the injury by defeating [plaintiffs'] challenge in the district court proceedings." *Crossroads Grassroots*, 788 F.3d at 316.  Courts have therefore ruled that parties may intervene in lawsuits to defend against actions seeking to change the regulatory status quo when "changes in the rules will affect the proposed intervenors' businesses, both immediately and in the future." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992); *Farmer v. U.S. Env't Prot. Agency*, 759 F.Supp.3d 101, 110 (D.D.C. 2024); *Env't Integrity Project v. Wheeler*, 2021 WL 6844257, at *3 (D.D.C. Jan. 27, 2021).  Here, this Court has the power to prevent immediate harm to API's business and policy interests by affirming BOEM's actions.

Finally, API has prudential standing because API member activities are the "subject of the contested regulatory action," *Amgen, Inc. v. Smith*, 357 F.3d 103, 108 (D.C. Cir. 2004) (quotation marks omitted), namely, the federal defendants' conduct of Gulf lease sales and resulting (or impending) issuance to API members of those leases.  Furthermore, the interests of API members correspond with NEPA's "national policy" to "encourage productive and enjoyable harmony between man and his environment," 42 U.S.C. §4321; *see also* Hopkins Decl. ¶6.  Because these business and policy interests "arguably fall within the zone of interests

4

protected or regulated by the statutory provision" at issue, *Bennett v. Spear*, 520 U.S. 154, 162

(1997), API's interests suffice to establish prudential standing.

## II.    API IS ENTITLED TO INTERVENE AS OF RIGHT

Federal Rule of Civil Procedure 24(a) provides that, "[o]n timely motion, the court must

permit anyone to intervene who … claims an interest relating to the property or transaction that

is the subject of the action, and is so situated that disposing of the action may as a practical

matter impair or impede the movant's ability to protect its interest, unless existing parties

adequately represent that interest."  The D.C. Circuit has:

> identified four prerequisites to intervene as of right: "(1) the
> application to intervene must be timely; (2) the applicant must
> demonstrate a legally protected interest in the action; (3) the action
> must threaten to impair that interest; and (4) no party to the action
> can be an adequate representative of the applicant's interests."

*Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*,

136 F.3d 153, 156 (D.C. Cir. 1998)).  The court has further recognized that Rule 24 is designed

to "liberalize the right to intervene in federal actions."  *United States v. AT&T Co.*, 642 F.2d

1285, 1291 (D.C. Cir. 1980) (citation and quotation marks omitted).  Or as another court of

appeals has put it, Rule 24(a) should be construed "liberally in favor of potential intervenors,"

"'guided primarily by practical considerations,' not technical distinctions."  *Sw. Ctr. for*

*Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2016).

All four Rule 24(a) factors are satisfied here—just as this Court concluded they were met

in granting Chevron's motion to intervene as of right.

### A.    This Motion Is Timely

API's motion is timely because it has been filed at a very early stage before federal

defendants have filed any response to the complaint.  *Fund for Animals, Inc. v. Norton*, 322 F.3d

5

728, 735 (D.C. Cir. 2003). As discussed above, at least nine API members participated in the December 10, 2025 lease sale, and this motion to intervene in light of the interests and standing of API members was filed soon thereafter. API commits to adhere to all briefing schedules that this Court adopts for the parties. Considering that, granting intervention is appropriate given API's strong interests in this case (as discussed further below) and would cause no prejudice to any party. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014); *Amador Cnty. v. U.S. Dep't of Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014).

B.    **API Possesses A Cognizable Interest That May Be Impaired Or Impeded By This Proceeding**

A proposed intervenor must demonstrate both "an interest relating to the property or transaction that is the subject of the action" and that the movant is "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Courts apply a "liberal approach" in determining whether a proposed intervenor's interest is cognizable. *S. Utah Wilderness All. v. Norton*, 2002 WL 32617198, at *5 (D.D.C. June 28, 2002). And the interest inquiry "'operates in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process.'" *WildEarth Guardians v. Jewell*, 2016 WL 11720188, at *2 (D.D.C. Nov. 23, 2016) (quoting *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 12-13 (D.D.C. 2010)). In analyzing this factor, moreover, courts "look[] to the 'practical consequences' of denying intervention." *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977). This "may include economic consequences," *Red Lake Band of Chippewa Indians v. Army Corps of Eng'rs*, 338 F.R.D. 1, 6 (D.D.C. 2021), such as "preventing … companies from seeing a return on investments they made in infrastructure, equipment, and personnel." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 640 F.Supp.3d 59, 68 (D.D.C. 2022).

6

Here, API and its members have a cognizable legal interest in oil and gas development in the Gulf of America, including lease sales and obtaining the leases for which they have submitted the highest bid.  These interests will be impaired if plaintiffs succeed in this action.  If Interior's lease sales are blocked or vacated (as plaintiffs request), then API's members, many of whom have participated in Gulf of America lease sales, will be unable to optimize oil and gas development in that region.  Such a development would have an enormous impact on API members holding or bidding on leases in the Gulf.  Hopkins Decl. ¶¶9-11.  For decades, these members have been the principal explorers and developers of leases in the Gulf, and they continue to be principal bidders for offshore leases in the area.  Hopkins Decl. ¶9.  Although government officials are the named defendants, in practice the exploration and development activities of API's members are the object of the competitive lease sale that plaintiffs' lawsuit challenges.  Granting plaintiffs' requested relief would therefore jeopardize API members' interests and investments in Lease Sale BBG1, as well as future lease sales in the Gulf.  API's interests, and the threat posed to them by plaintiffs' suit—are the exact sort of interests meriting intervention.

Indeed, plaintiffs expressly identify API members' oil and gas activities in the Gulf of America to support their claims.  *See* Compl. ¶¶58-67.  And plaintiffs' theory of harm rests on allegations that API members' oil and gas development would harm species, damage ecosystems, and exasperate climate change.  *Id.* ¶¶61-68, 73-80.  Plaintiffs' claims would thus (1) substantially slow and inhibit oil and gas investment in the Gulf, because they ask for a full NEPA review, (2) push for an "alternatives" analysis that would remove millions of acres from potential leasing, and (3) vacate sales that have already been made.  *See id.* ¶¶102-124; Request for Relief.

Consistent with the foregoing, courts have routinely permitted oil and gas industry trade associations to intervene in litigation posing a threat to their members' ability to engage in oil and gas development.  *See supra* p.2 (listing cases).

**C.        API's Interests Will Not Be Adequately Protected By An Existing Party**

The Supreme Court has made clear that the adequate-representation prong imposes a "minimal" burden, requiring the movant to show that the interests of an existing party "may be" inadequate.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-539 & n.10 (1972).  In particular, the parties' and a movant's "interests need not be wholly adverse before there is a basis for concluding that existing representation … may be inadequate."  *Fund for Animals*, 322 F.3d at 737 (quotation marks omitted).

Here, none of the parties will adequately represent API's or its members' interests. Plaintiffs' position is inimical to that of API, seeking to vacate Lease Sale BBG1 and delay Gulf leasing mandated by the One Big Beautiful Bill Reconciliation Act.  And the federal defendants are "charged by law with representing the public interest," whereas private entities "seek[] to protect a more narrow and 'parochial' financial interest not shared" by the general public.  *Fund for Animals*, 322 F.3d at 737 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)).  For example, while API and its members share the federal defendants' interest in the development of oil and gas resources in the Gulf, the federal defendants must consider a broader array of interests and goals.  Thus, as the Supreme Court has explained, where the government has a statutory duty to consider interests and pursue goals distinct from a proposed intervenor's, a federal defendant will not adequately represent that proposed intervenor's interests.  *Trbovich*, 404 U.S. at 538-539.  In other words, even where the government and an intervenor "share a common interest—upholding the [agency action]—that shared interest does not guarantee adequate representation of the" intervenor given the profoundly different

8

motivating factors behind each party. *County of San Miguel v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007).

Nor will intervenor Chevron (an API member) adequately represent API's interests. Chevron represents direct interests in its own investments, bids, operations, and lease ownership. API's interests are significantly broader, reflecting both the interests of other members who participated in Lease Sale BBG1 and the diverse business interests of the approximately 600 companies in its membership, which are spread throughout each stage of oil and gas development across the United States. *See* Hopkins Decl. ¶5. This broader range of interests means API's arguments will work to advance outcomes that benefit the oil and gas industry writ large, rather than any one company.

In short, because "[t]he interests of government and the private sector may diverge" here, "[o]n some issues [API] will have to express [its] own unique private perspectives." *Berg*, 268 F.3d at 823. And because the interests of Chevron are far narrower than API's, API will likely have different views to share. API should thus be allowed to intervene as of right so that it can offer those perspectives and protect its interests.

## III.    IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION

Federal Rule of Civil Procedure 24(b)(1) and (3) provide in relevant part that:

> On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact…. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties[.]

"[P]ermissive intervention is an inherently discretionary enterprise," *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), and "courts in this circuit generally take a liberal approach to intervention." *LeBoeuf, Lamb, Greene & MacRae, LLP v. Abraham*, 205 F.R.D. 13, 18 (D.D.C. 2001).

9

API's and the federal defendants' defenses to the complaint will involve common questions of law—including what NEPA and APA standards ought to be applied—and common questions of fact regarding the federal defendants' fulfillment of their obligations under the statutes upon which the complaint relies. As discussed, moreover, API has a substantial interest in the outcome of this litigation. Indeed, API's participation would vindicate "a major premise of intervention—the protection of third parties affected by pending litigation." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011); *accord Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3d Cir. 1998). Finally (and as also discussed), this motion is timely. Hence, if the Court denies API's request to intervene as of right, it should exercise its discretion and grant API permissive intervention.

## IV.    ASSUMING INTERVENTION IS GRANTED, API'S RESPONSE TO THE COMPLAINT SHOULD BE DUE ON THE SAME DAY AS DEFENDANTS' RESPONSE

Rule 24 requires a motion to intervene to be "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). "Several circuits," however, including the D.C. Circuit, "have eschewed overly technical readings of Rule 24(c)." *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 515 (1st Cir. 2017) (citing *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004) (en banc)). Indeed, where there is no claim of "inadequate notice" regarding the potential intervenor's claims, the D.C. Circuit has seen "no reason to bar intervention based solely upon this technical defect, if defect it be." *Massachusetts*, 373 F.3d at 1236 n.19. Hence, as another judge in this district has explained, "because the requirement is designed to help determine whether the movant has a claim or defense that shares a common question of law or fact, courts have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for a motion." *Hughes v. Abell*, 2014 WL 12787807, at \*7 (D.D.C. Feb. 10, 2014) (quotation marks omitted). API's

10

motion and the accompanying declaration provide the parties with ample notice. Accordingly, should API's motion to intervene be granted, API requests that it be allowed to defer the filing of an answer in intervention until the federal defendants are required to answer, as other judges in this district have allowed. *See, e.g.*, Minute Order, *Voyageur Outward Bound Sch. v. United States,* No. 18-cv-1463 (D.D.C. June 28, 2018).

## CONCLUSION

The Court should grant API's motion for leave to intervene.

January 9, 2026                                            Respectfully submitted,


                                                           /s/ Tommy P. Beaudreau
                                                           Tommy P. Beaudreau (D.C. Bar #474313)
                                                           Daniel S. Volchok (D.C. Bar #497341)
                                                           WILMER CUTLER PICKERING
                                                               HALE AND DORR LLP
                                                           2100 Pennsylvania Avenue N.W.
                                                           Washington, D.C. 20037
                                                           (202) 663-6000
                                                           tommy.beaudreau@wilmerhale.com
                                                           daniel.volchok@wilmerhale.com

11

**CERTIFICATE OF SERVICE**

On January 9, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ *Tommy Beaudreau*
Tommy Beaudreau