**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEALTHY GULF, *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>BURGUM, *et al.*,<br><br>     Defendants,<br><br>  and<br><br>AMERICAN PETROLEUM INSTITUTE,<br><br>     Proposed Intervenor-Defendant. | No. 1:25-CV-04016-APM<br><br><br>Hon. Amit P. Mehta |

**DECLARATION OF HOLLY HOPKINS IN SUPPORT OF THE AMERICAN
PETROLEUM INSTITUTE'S MOTION TO INTERVENE**

I, Holly Hopkins, declare as follows:

1.      I am over eighteen years old, have personal knowledge of the matters set forth in this declaration, and am competent to testify as to the matters set forth herein.

2.      I am the Vice President of Upstream Policy for the American Petroleum Institute (API), and have been employed at API for over 15 years.  My work at API covers, among other things, regulatory and legislative matters related to the leasing, development, and production of oil and gas in federal waters.

3.      Prior to joining API, I was employed by the Department of the Interior (DOI) for over seven years.  At DOI, I served as Special Assistant to the Deputy Secretary and as Chief of Staff at the Minerals Management Service, which is now organized into the Bureau of Safety and Environmental Enforcement and the Bureau of Ocean Energy Management.  In both positions, I

1

did significant work related to federal offshore oil and gas leasing and development policies and regulations.

4.    Based on my experience at API and DOI, I am familiar with API's member companies' activities concerning leasing, exploration, and production activities in all parts of the United States Outer Continental Shelf, including the Gulf of America.

5.    API is the primary national trade association of the oil and natural gas industry. API represents approximately 600 member companies involved in all aspects of the industry, including exploration and production, and its members conduct much of the production, refining, marketing, and transportation of petroleum and petroleum products in the United States.

6.    Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry, capable of meeting the energy needs of our Nation in an efficient and environmentally responsible manner.  Representation of the interests of the industry in litigation is part of API's overall purpose, and API has on numerous occasions intervened as a party in litigation affecting those interests.

7.    API member companies include Anadarko US Offshore LLC (a wholly owned subsidiary of Occidental Petroleum Corporation), BP Exploration & Production Inc., Chevron U.S.A. Inc., Woodside Energy (Deepwater) Inc., Murphy Exploration & Production Company, Shell Offshore Inc., Equinor USA E&P Inc., Repsol OCS LLC, LLOG Exploration Offshore, LLC, and W&T Offshore, Inc.

8.    Gulf of America oil and gas development is carried out exclusively through private oil and gas companies, which acquire leases and other approvals to conduct oil and gas exploration and development through processes set forth in the Outer Continental Shelf Lands Act.  Those companies acquire leases through a sealed bidding process, and then engage in

exploration efforts that, if successful, will lead to production.  Operations for the exploration and development of oil and gas resources on a lease—including drilling—are conducted pursuant to plans and permits that must be approved by the Department of the Interior.

9.      API members include leaseholders in the Gulf region, and API members have been for decades among the principal bidders on—and have expended significant sums to obtain leases from the government for—Gulf leases to explore for and develop valuable oil and gas resources.  Members of API are directly engaged in oil and gas exploration and production and for decades have been among the principal developers of leases throughout the United States, including the Gulf.  In addition to leaseholders and operators, API members include companies that provide support services—for example, supplying material and equipment—for offshore oil and gas development.

10.      API has previously submitted comments to the Department of the Interior on behalf of its members supporting leasing and oil and gas development in the Gulf, explaining the members' interests in such leasing.  For example, API participated heavily in Interior's consideration of the "2024–2029 Five Year Program."  API submitted comments with respect to Interior's draft program, the final proposed program, and the draft environmental impact statement.

11.      Plaintiffs' claims in this lawsuit seek to vacate the Final Notice of Sale for Lease Sale BBG1 and to vacate or enjoin leases awarded from that sale.  That relief would substantially harm API members by depriving them of leases on which they are the presumed high bidders in Lease Sale BBG1.  Given API members' direct and substantial involvement in oil and gas exploration and development, plaintiffs' claims will directly affect API members' interests in obtaining Gulf leases and, thereafter, exploring for and developing valuable oil and gas

3

resources.  At a minimum, plaintiffs' request to vacate the Final Notice of Sale for Lease Sale BBG1 and to vacate or enjoin leases awarded from Lease Sale BBG1 could substantially delay the oil and gas development activities of API members.

I declare under penalty of perjury that the foregoing is true to the best of my knowledge.

Executed on January 9, 2026, in Washington, D.C.

Holly A. Hopkins