**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>*Plaintiff*,<br>v.<br>DOUG BURGUM, *et al.*,<br>*Defendants*,<br>*and*<br>AMERICAN PETROLEUM INSTITUTE,<br>*Defendant-Intervenor*. | No. 24-cv-00990 (DLF) |

## MEMORANDUM OPINION

The Center for Biological Diversity brings this action against the Secretary of the Interior, the U.S. Fish and Wildlife Service, and the Director of the U.S. Fish and Wildlife Service to set aside a 2018 Biological Opinion and 2025 Consultation Determination issued by the Service under the Endangered Species Act, 16 U.S.C. § 1531 *et seq*. Before the Court is the defendants' Motion to Dismiss, Dkt. 48. For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

### A. Legal Background

Congress enacted the Endangered Species Act (ESA) to "protect and conserve endangered and threatened species and their habitats." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 651 (2007); *see* 16 U.S.C. § 1531(b). To that end, the Act requires that each federal agency "insure that any action authorized, funded, or carried out by [the] agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in

the destruction or adverse modification of [a protected species' critical] habitat." 16 U.S.C. § 1536(a)(2). "The Fish and Wildlife Service administers the ESA with respect to species under the jurisdiction of the Secretary of the Interior, while the National Marine Fisheries Service administers the ESA with respect to species under the jurisdiction of the Secretary of Commerce." *Nat'l Ass'n of Home Builders*, 551 U.S. at 651 (citation modified). Federal agencies must thus consult with the U.S. Fish and Wildlife Service and/or the National Marine Fisheries Service regarding any proposed action that may affect an endangered or threatened species, or its critical habitat. 16 U.S.C. § 1536(a)(2)–(3).

After consultation, the relevant Service must issue a written statement—or, biological opinion—"setting forth the Secretary's opinion, and a summary of the information on which the opinion is based, detailing how the agency action affects [a] species or its critical habitat." *Id.* § 1536(b)(3)(A); *see Ctr. for Biological Diversity v. Zeldin*, 171 F.4th 356, 363, 365–66 (D.C. Cir. 2026). If the Service concludes that the proposed action is "likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat," 16 U.S.C. § 1536(a)(2), the statement must suggest "reasonable and prudent alternatives" that the agency can take, *id.* § 1536(b)(3)(A).

The ESA further establishes an Endangered Species Committee that is empowered to exempt certain agency actions from the Act's consultation requirements. *See id.* § 1536(e); *see also id.* § 1536(e)(3) (providing that the Committee shall be composed of the Secretary of Agriculture, the Secretary of the Army, the Chairman of the Council of Economic Advisers, the Administrator of the Environmental Protection Agency, the Secretary of the Interior, and the Administrator of the National Oceanic and Atmospheric Administration). As relevant here, the

Committee must "grant an exemption for any agency action if the Secretary of Defense finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j).

**B. Factual and Procedural Background**

In 2010, the U.S. Fish and Wildlife Service, the Bureau of Ocean Energy Management, and the Bureau of Safety and Environmental Enforcement "began the process of reinitiating consultation on federally approved" "oil and gas activities in the Gulf of Mexico." Am. Compl. ¶¶ 1, 91, Dkt. 36. Following consultation on that action, *id.* ¶ 91, the Service issued on April 18, 2018, a biological opinion analyzing the impacts of the Bureaus' "offshore oil and gas exploration, development, production, and decommissioning in the Gulf for the next five decades on endangered and threatened species under the Service's jurisdiction," *id.* ¶ 3; *see id.* ¶¶ 92–93. The 2018 Biological Opinion concluded that these oil and gas activities were "not likely to adversely affect" certain species, *id.* ¶ 94, and were not likely to "jeopardize th[e] continued existence" of or "destroy or adversely modify th[e] designated critical habitat" of others, *id.* ¶ 95.

On April 8, 2024, the Center for Biological Diversity (Center) filed suit in this Court, arguing that the 2018 Biological Opinion was arbitrary and capricious, an abuse of discretion, and contrary to law in violation of the Administrative Procedure Act. *See* Compl. ¶¶ 133–37, Dkt 1.[1] In particular, the Center argued that the U.S. Fish and Wildlife Service had failed to address the relevant risks and effects associated with oil and gas drilling, including the impacts on climate change. *See id.* ¶¶ 121–37. The Center further argued that the U.S. Fish and Wildlife Service had unreasonably delayed in responding to the Center's petition "requesting that the Service amend

[1] Dr. Stuart Pimm—a professor of ecology at Duke University—joined the Center as a named plaintiff in the Complaint, *see* Compl. ¶¶ 2, 25–29, but not the Amended Complaint.

ESA regulations to specify that greenhouse gas emissions must be considered during ESA consultation." *Id.* ¶ 11; *see id.* ¶¶ 1, 3, 138–44.

One month before the Center filed its Complaint, the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement requested that the U.S. Fish and Wildlife Service "reinitiate consultation on the 2018 Biological Opinion to consider new information regarding the risks of oil spills from oil and gas leasing, exploration, development, production, decommissioning, and all related activities in the Gulf." Am. Compl. ¶ 104. The Bureaus also requested that the Service concur with their determination that such activities were not likely to adversely affect certain species. *Id.* On March 28, 2025, the U.S. Fish and Wildlife Service issued a consultation in which it reaffirmed the 2018 Biological Opinion's findings and agreed with the Bureaus' conclusions. *See id.* ¶¶ 105–08.

On August 4, 2025, the Center filed an Amended Complaint, asserting that the findings in both the 2018 Biological Opinion and the 2025 Consultation Determination were not in accordance with the ESA or its implementing regulations, in violation of the Administrative Procedure Act. *See id.* ¶¶ 110–19. The Center asked this Court to declare unlawful, vacate, and remand both the Opinion and the Determination. *See* Am. Compl., Prayer for Relief.

In March 2026, Secretary of Defense Pete Hegseth "notified the Chairman [of the Endangered Species Committee] that he found it necessary for reasons of national security that the Endangered Species Committee grant an exemption from the Endangered Species Act's requirements for the agency action reviewed in" the U.S. Fish and Wildlife Service's 2018 Biological Opinion and 2025 Consultation Determination. Endangered Species Committee Order, 91 Fed. Reg. 16966, 16966 (Apr. 3, 2026). Secretary Hegseth included with the notice a series of

"National Security Findings" supporting that exemption. *See generally* Decl. of Kristen Monsell, Ex. 1 (National Security Findings), Dkt. 50-1.

On March 31, 2026, the Endangered Species Committee issued an order exempting from the ESA's consultation requirements the "full scope" of the agency action "for the duration of th[e relevant] activities." Endangered Species Committee Order, 91 Fed. Reg. 16966, 16966 (Apr. 3, 2026). The Exemption Order defined the relevant agency action as that described in paragraphs 90 and 103 of Secretary Hegseth's National Security Findings. *Id.* Those paragraphs provided:

> The agency action under consideration—all oil and gas activities in the Gulf of America—encompasses the full suite of agency actions that [the Bureau of Ocean Energy Management] and [the Bureau of Safety and Environmental Enforcement] identified when initiating and pursuing ESA consultation with [the U.S. National Marine Fisheries Service], which [the Service] then reviewed in its 2025 biological opinion and [the U.S. Fish and Wildlife Service] reviewed in the 2018 and 2025 consultation decisions.
>
> . . .
>
> I find that it is necessary for reasons for national security to exempt from the Endangered Species Act the proposed action reviewed in [the U.S. National Marine Fisheries Service's] 2025 biological opinion and in [the U.S. Fish and Wildlife Service's] 2018 and 2025 consultation decisions, which covers all oil and gas exploration and development activities associated with [the Bureaus'] Outer Continental Shelf Oil and Gas Program.

National Security Findings ¶¶ 90, 103.

The defendants have now moved to dismiss the Amended Complaint for lack of subject matter jurisdiction, arguing that the Exemption Order has mooted this case. *See* Mot. to Dismiss 2, Dkt. 48.

## II. LEGAL STANDARDS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because mootness itself deprives the

court of jurisdiction." *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017); *see Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." (citation modified)). If the Court determines that a case has become moot, it must dismiss the case. *See* Fed. R. Civ. P. 12(h)(3).

When reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation modified). The Court may also "undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (citation modified).

## III. ANALYSIS

### A. The Exemption Order Has Mooted This Case

A legal dispute becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (citation modified). As such, a court must dismiss a case as moot if "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citation modified), or if the court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016) (citation modified). The party asserting mootness "bears the 'heavy burden' of establishing that the case is moot." *Zukerman v. USPS*, 961 F.3d 431, 441 (D.C. Cir. 2020) (citation modified).

The defendants have met that heavy burden here. The Exemption Order exempts from the ESA's consultation requirements the "full scope" of "all oil and gas exploration, development, and production activities associated with the [Bureaus'] Outer Continental Shelf Oil and Gas Program." Endangered Species Committee Order, 91 Fed. Reg. 16966, 16966 (Apr. 3, 2026). Because the activities analyzed in the 2018 Biological Opinion and 2025 Consultation Determination are no longer subject to the ESA's consultation requirement, vacating and remanding the Opinion and Determination would not provide the Center with any "effective relief." *Lemon*, 514 F.3d at 1315 (citation modified); *see* Order, *Sierra Club v. National Marine Fisheries Service*, No. 25-cv-1627 (D. Md. June 24, 2026) (granting defendants' motion to dismiss as moot parallel action challenging 2025 National Marine Fisheries Service biological opinion following Exemption Order); Order Granting Mot. for Relief from Judgment, *Louisiana v. National Marine Fisheries Service*, No. 25-cv-691 (W.D. La. Apr. 29, 2026) (relieving defendants from order requiring remand of 2025 National Marine Fisheries Service biological opinion following Exemption Order); *see also* Notice of Suppl. Authority, Ex. 1 (Transcript of *Sierra Club* Oral Ruling on Motion to Dismiss), Dkt. 54.

The Center does not dispute that the Exemption Order moots aspects of this case, instead arguing that a live controversy persists because the Order does not apply to all relevant oil and gas activities. *See* Opp'n to Mot. to Dismiss (Opp'n) 13–16, Dkt. 50. In particular, the Center contends that the Exemption Order was limited to "oil and gas exploration, development, and production activities, as well as the avoidance or minimization measures that are described in the agency action analyzed . . . in FWS's 2018 and 2025 consultation decisions"—a subset of agency action that does not include "leasing" and "decommissioning" activities analyzed in the 2018 Biological Opinion and 2025 Consultation Determination, *id.* at 14 (citation modified).

The Court rejects this narrow reading. To start, the Center itself recently took a broader view, characterizing the Exemption Order as a "sweeping exemption" covering "*all* [Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement] Gulf of Mexico oil and gas authorizations." First Am. Compl. ¶ 9, *Center for Biological Diversity v. Burgam*, No. 26-cv-940 (D.D.C. Mar. 31, 2026) (emphasis added). Further, the Exemption Order expressly identifies the exempted agency action as the action defined in paragraphs 90 and 103 of the Secretary's National Security Findings. Endangered Species Committee Order, 91 Fed. Reg. 16966, 16966 (Apr. 3, 2026). Those paragraphs, in turn, clearly encompass "the proposed action reviewed in" the 2018 Biological Opinion and 2025 Consultation Determination. National Security Findings ¶ 103. As such, the Exemption Order "encompasses the full suite of agency actions" addressed in the decisions the Center challenges here. *Id.* ¶ 90; *cf.* Notice of Suppl. Authority, Ex. 1, at 17 ("At the end of the day, the plaintiffs' attempt to artificially cabin the reach of the exemption finds no support in its text or in Secretary Hegseth's findings in Paragraphs 90 and 103 of his memorandum.").

Because the Exemption Order exempts from the ESA's consultation requirements the activities analyzed in the 2018 Biological Opinion and 2025 Consultation Determination, the Court finds that this case is moot.

**B. A Stay Is Not Appropriate Here**

The Center argues that, rather than dismiss this case as moot, the Court should stay the case pending resolution of separate legal challenges to the Exemption Order. *See* Opp'n 21–23; *id.* at 21 n.5 (collecting pending cases). In support of that argument, the Center notes that, "[i]f the Court were to grant the motion to dismiss, and another court then held the exemption unlawful, [the

Center] could be precluded from filing another lawsuit" challenging the 2018 Biological Opinion and 2025 Consultation Determination. *Id.* at 23.

The Court will decline to stay this case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Accordingly, "[a] trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004). Even assuming there may be circumstances in which it is appropriate for a court to stay an otherwise moot case pending resolution of other litigation, *but see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."), the Center has not identified any facts warranting a stay here, *cf. P.J.E.S. ex rel. Francisco v. Mayorkas*, 652 F. Supp. 3d 103, 109–12 (D.D.C. 2023) (staying case pending other litigation where resolving motion to dismiss would involve navigating "thicket" of rule recissions and judicial decisions, and resolving "potentially complicated mootness questions"). Indeed, should a court ultimately hold the Exemption Order unlawful, the 2018 Biological Opinion and 2025 Consultation Determination will be reinstated, allowing the Center to raise again the challenges it advances in this litigation. *See Alaska v. United States Dep't of Agric.*, 772 F.3d 899, 900 (D.C. 2014) (holding that new right of action accrued when court order reinstated repealed rule). As such, the Court perceives little value in staying this case while the Exemption Order litigation proceeds.

**CONCLUSION**

For the foregoing reasons, the Court grants the defendants' Motion to Dismiss. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 29, 2026